IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAKITA L. SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 11-948-CJP |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Jakita L. Smith is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her Supplemental Security Income (SSI) Benefits.[1]

## Procedural History

In 2001, while she was a minor, Jakita Smith was awarded SSI benefits due to mental retardation. (Tr. 41). Pursuant to 42 U.S.C. §1382c(a)(3)(H)(iii), when she reached the age of 18, the Commissioner "redetermined" her eligibility to receive benefits using the adult criteria. In December, 2008, the Commissioner determined that she was no longer qualified to receive SSI benefits. (Tr. 37). The cessation of benefits was affirmed on reconsideration. After holding an evidentiary hearing, Administrative Law Judge (ALJ) Joseph W. Warzycki issued a written decision on August 24, 2010, finding that she was not disabled. (Tr. 12-20). Plaintiff's request

---

[1]This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 16.

for review was denied by the Appeals Council, and the August 24, 2010, decision became the final agency decision. (Tr. 1A).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this court.

### Issue Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ erred in finding that she did not meet the requirements of Listing12.05C, Mental Retardation.

2. Remand is required because one page of a report issued by Dr. Rudolph, a consultative examiner, is missing.

### Applicable Standards

In the Social Security context, a claimant is "disabled" when she has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**[2] A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and**

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

**1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992);** ***Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).** If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** ***Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** ***Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).** Thus, the Court must determine not whether plaintiff is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made. **See,** ***Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).** The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420,**

**1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997).**  In analyzing the ALJ's decision for "fatal gaps or contradictions," the Court "give[s] the opinion a commonsensical reading rather than nitpicking at it.  **Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999)**.  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, **Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

## The Decision of the ALJ

ALJ Warzycki followed the five-step analytical framework described above.  He determined that Ms. Smith had not been engaged in substantial gainful activity since the alleged onset date, and that she had severe impairments of borderline intellectual functioning, right lower extremity impairment of unknown etiology, and history of asthma.  He accepted the results of the IQ testing administered by Dr. Deppe, which were higher than the results on the tests given by Dr. Rudolph.  Based on those results, he determined that plaintiff did not meet or equal a listed impairment.  He specifically considered Listing 12.05.

## The Evidentiary Record

The Court has reviewed and considered the entire record in formulating this Report and Recommendation.  The following is a summary of some of the pertinent portions of the written record.  The review of the record will focus on the narrow issues raised by plaintiff.

**1.**     **Evidentiary Hearing**

The hearing was continued from the original setting to allow plaintiff to obtain representation. (Tr. 335-341). On the rescheduled date, May 4, 2010, plaintiff appeared again without a representative. Her mother also appeared. (Tr. 344).

Ms. Smith testified that she was 5'1" tall and weighed 115 pounds. She lived with her mother. (Tr. 344). She had done office work (filing papers) and janitorial work in a summer youth program in July, 2009. (Tr. 346). She had applied for jobs in hotels and restaurants, but had never been hired. According to her mother, she could not fill out applications correctly. (Tr. 348-349). She graduated from high school, but she had been in special education classes. (Tr. 349). At the time of the hearing, she was taking classes at a community college. She was taking basic English, writing and algebra. (Tr. 350-351). Plaintiff testified that she could read and write "okay." (Tr. 351). Two of her classes were in the evening, and she took the bus home. (Tr. 353). She was able to use a computer to get e-mail and to access the internet. (Tr. 353).

Ms. Smith and her mother testified that she had pain in her legs and could not walk for long periods of time. One of her legs is shorter than the other. (Tr. 357-358).

Ms. Smith's mother testified that she received special services at the community college. She had tutors and was able to take tests in a room by herself. (Tr. 361).

Brenda Young testified as a vocational expert. She testified that plaintiff had no relevant past work. The ALJ asked her to assume a person who could do light work, limited to only occasional climbing and only simple, repetitive tasks and instructions. The VE testified that this person would be able to do jobs that exist in significant numbers, such as dining room and cafeteria helper and light janitorial work. (Tr. 367-368).

**2.    IQ Testing as a child**

In 1999, when plaintiff was 9 years old, the Wechsler Intelligence Scale for Children (WISC-R) was administered through the Department of Special Education.  The results were verbal IQ of 55, performance IQ of 75, and full scale IQ of 64.  (Tr. 170).

Psychologist Gregory C. Rudolph, Ph.D., administered IQ testing in 2001, in connection with plaintiff's application for SSI benefits.  The results were verbal IQ of 56, performance IQ of 69, and full scale IQ of 59.  (Tr. 170).

**3.    Consultative Examination and IQ Testing by Dr. Deppe**

Psychologist Harry J. Deppe, Ph.D., performed a consultative evaluation on November 15, 2008.  Having been born on November 2, 1990, plaintiff had just turned 18 years old.  She was in the 12th grade, in special education classes.  Dr. Deppe administered the Wechsler Adult Intelligence Scale-III (WAIS-III).  The results were verbal IQ score of 77, performance IQ score of 79, and full scale IQ score of 76.  Dr. Deppe indicated that these scores are in the borderline range of intellectual functioning, and he considered the results to be valid.  He concluded that Ms. Smith's ability to relate to others, understand and follow simple instructions and to maintain attention required to perform simple, repetitive tasks were intact.  (Tr. 280-282).

**4.    Consultative Examination and Testing by Dr. Rudolph**

Psychologist Gregory C. Rudolph, Ph.D., administered the Wechsler Adult Intelligence Scale-IV (WAIS-IV) on June 1, 2010.  On this version of the Weschler Scale, the verbal comprehension index is the functional equivalent of the verbal IQ on the earlier version, and the perceptual reasoning index is the functional equivalent of the performance IQ on earlier versions.  See, http://www.pearsonassessments.com/hai/images/products/wais-iv/WAIS-IV_FAQ

-final.pdf., at p. 4.

Ms. Smith's results on the test administered by Dr. Rudolph were comprehension index of 70, perceptual reasoning index of 60, and full scale IQ of 60.  Dr. Rudolph stated that these scores are in the mild mentally handicapped range, and he considered the results to be valid.  (Tr. 328-329).

Dr. Rudolph also completed a form on which he assessed plaintiff's mental RFC.  He indicated that she had mild restriction of her ability to understand and remember simple instructions, follow simple instructions and make simple work-related decisions, and that she had moderate restrictions with respect to complex instructions and decisions.  This page is labeled "Page 4 of 6." (Tr. 330).   It is evident that the next page of the report is missing.  Page 331 of the transcript is labeled "Page 6 of 6" and is the signature page.  (Tr. 331).

## Analysis

Plaintiff's main argument is that the ALJ erred in finding that she did not meet or equal Listing 12.05(C), Mental Retardation.  She argues that she met the Listing on the basis of the IQ tests administered by Dr. Rudolph in 2010.

A finding that a claimant's condition meets or equals a listed impairment means that the claimant is presumptively disabled.  In order to be found presumptively disabled, the claimant must meet *all* of the criteria in the listing.  20 C.F.R. §416.925(d).  Plaintiff bears the burden of showing that her condition meets or equals the listed impairment.  **Maggard v. Apfel, 167 F.3d 376, 379-380 (7th Cir. 1999).**

The so-called Listings are set forth at 20 C.F.R. Supbpart P, App. 1.  Listing 12.00 covers mental disorders in general; Listing 12.05 covers mental retardation.  Listing 12.00, paragraph

-final.pdf., at p. 4.

Ms. Smith's results on the test administered by Dr. Rudolph were comprehension index of 70, perceptual reasoning index of 60, and full scale IQ of 60.  Dr. Rudolph stated that these scores are in the mild mentally handicapped range, and he considered the results to be valid.  (Tr. 328-329).

Dr. Rudolph also completed a form on which he assessed plaintiff's mental RFC.  He indicated that she had mild restriction of her ability to understand and remember simple instructions, follow simple instructions and make simple work-related decisions, and that she had moderate restrictions with respect to complex instructions and decisions.  This page is labeled "Page 4 of 6." (Tr. 330).   It is evident that the next page of the report is missing.  Page 331 of the transcript is labeled "Page 6 of 6" and is the signature page.  (Tr. 331).

## Analysis

Plaintiff's main argument is that the ALJ erred in finding that she did not meet or equal Listing 12.05(C), Mental Retardation.  She argues that she met the Listing on the basis of the IQ tests administered by Dr. Rudolph in 2010.

A finding that a claimant's condition meets or equals a listed impairment means that the claimant is presumptively disabled.  In order to be found presumptively disabled, the claimant must meet *all* of the criteria in the listing.  20 C.F.R. §416.925(d).  Plaintiff bears the burden of showing that her condition meets or equals the listed impairment.  **Maggard v. Apfel, 167 F.3d 376, 379-380 (7th Cir. 1999).**

The so-called Listings are set forth at 20 C.F.R. Supbpart P, App. 1.  Listing 12.00 covers mental disorders in general; Listing 12.05 covers mental retardation.  Listing 12.00, paragraph

(A), explains that the structure of Listing 12.05 is different from the structure of most of the other Listings in the mental disorders section:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

Thus, in order to meet Listing 12.05(C), Ms. Smith must satisfy *both* the criteria of the introductory paragraph, *and* the criteria of paragraph (C).

The criteria of the introductory paragraph of Listing 12.05 are "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22."  The requirement of onset before age 22 is intended to limit 12.05 to an "innate condition" as opposed to conditions caused by disease or accident suffered as an adult.  See, ***Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007)**.

The criteria of 12.05(C) are "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  The IQ scores referred to in Listing 12.05 are scored on the scale that is used by the Wechsler series, which is the testing that was administered to Ms. Smith.  Further, "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."  Listing 12.00, paragraph D(6)(c).

ALJ Warzycki evaluated plaintiff under Listing 12.05(C) and concluded that she did not meet the criteria.  He gave "the greatest weight to the highest IQ scores of record."  The highest

IQ scores of record were the scores on the testing administered by Deppe in 2008.  On that testing, all of the scores were above 70.  (Tr. 280).  The ALJ recognized that she had scored below 70 on other testing, but reasoned that  "Common sense dictates one cannot manifest a high[er] degree of intelligence than what one possesses, although one can manifest a lower one." Noting that there was no evidence of any disease or trauma that would account for a lowering of her IQ between the testing done by Dr. Deppe and Dr. Rudolph, the ALJ concluded that "the high scores are the more accurate ones."  (Tr. 16-17).  Plaintiff assigns this as error.

      Relying on the statement from Listing 12.00, paragraph D(6)(c) ("where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."), plaintiff argues that the ALJ was required to accept her lowest score.  Plaintiff candidly admits that, "The regulations are silent on whether a similar 'lowest score' approach should be used when multiple IQ test scores have been obtained in different tests."  Doc. 17, p. 12.

      Plaintiff  does not cite any case from the Seventh Circuit which discusses the issue of results from multiple IQ tests.  This Court's independent research has not found any such case. The only cases cited by plaintiff are District Court cases from other circuits, and one case from the Ninth Circuit.  None of those cases are authoritative precedent for this Court, and the reasoning of those cases is not persuasive.

      Plaintiff's argument must be rejected.  The statement quoted above clearly requires the ALJ to use the lowest score where the administration of *one* test yields more than one score. This is clear from the plain language of the regulation ("where more than one IQ is customarily derived from the test administered").  This language cannot be stretched to sensibly apply to a

situation where plaintiff has taken the IQ test multiple times.  Simply put, taking the Wechsler series test one time yields multiple scores.  In that situation, the agency is directed to use the lowest score.  The statement cannot be read to apply to a situation where IQ testing has been administered more than once; to do so would be to make the clause "where more than one IQ is customarily derived from the test administered" nonsensical.

Plaintiff has not advanced any argument rooted in either logic or policy that would favor using the lowest score where multiple tests have been administered.  The cases cited by plaintiff do not offer any persuasive analysis.  Rather, they simply accept as a given that the regulations imply a preference for the use of the lowest score when more the one test has been administered.  However, the regulations do not state any such preference, and the Social Security Administration has never issued a ruling or other statement expressing such a preference.

In the absence of any authoritative precedent from the Seventh Circuit or any guidance from the agency, this Court concludes that the ALJ did not err in finding that plaintiff had not met the first criteria of 12.05(C), i.e., a "valid verbal, performance, or full scale IQ of 60 through 70."

Plaintiff's only other point concerns the missing page from Dr. Rudolph's Mental RFC assessment form.  Plaintiff notes that there is no indication that the ALJ ever saw the missing page.  The ALJ's apparent failure to obtain a full copy of Dr. Rudolph's report was error.

The ALJ "has a duty to develop a full and fair record."  **Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009)**.  This duty is "enhanced when a claimant appears without counsel; then the ALJ must 'scrupulously anc conscientiously [ ] probe into, inquire of, and explore for all the relevant facts.'" **Ibid., internal citations omitted**.

Here, Ms. Smith was without counsel at the evidentiary hearing as well as at the Appeals Council review stage. Ms. Smith's mother prepared the request for Appeals Council review. See, Tr. 1A-8.

Because ALJ Warzycki concluded that Ms. Smith did not meet a Listing, the issue of her RFC became dispositive. The ALJ noted that Dr. Rudolph assigned "multiple moderate mental functional limitations" in his report, without noting that one page of the report was missing. Tr. 15. Despite the fact that it was incomplete, the ALJ relied on Dr. Rudolph's report to support his RFC assessment. In assessing RFC, the ALJ said that he accepted the opinions of Dr. Havens, a state agency consultant who completed a mental RFC assessment. (Tr. 309-312). As the ALJ noted, Dr. Havens concluded that Ms. Smith was capable of "simple work activity." Dr. Havens did not examine plaintiff, but Dr. Rudolph did. The ALJ said that Dr. Havens' opinion was "corroborated" by Dr. Rudolph's report. (Tr. 18).

Dr. Rudolph examined Ms. Smith at the request of the agency. The record presents no reason to suspect that the ALJ could not have obtained the missing page of Dr. Rudolph's report, and the Commissioner does not suggest that there was any such reason. If fact, there is no indication in the record that the ALJ made any attempt at all to obtain the missing page. This was a violation of the ALJ's duty to develop a full and fair record, and thus was an error.

Because of the ALJ's error, this case must be remanded. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Smith is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those  issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision finding that Jakita L. Smith is not disabled and not eligible to receive SSI benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:  July 20, 2012.**


                                   <u>s/ Clifford J. Proud</u>
                                   **CLIFFORD J. PROUD**
                                   **UNITED STATES MAGISTRATE JUDGE**